IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DARYL WAYNE MASON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV–21–248–JAR |
| ) | |
| **KILO KIJAKAZI,** ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Plaintiff Daryl Wayne Mason (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

## Claimant's Background

The claimant was forty-four years old at the time of the administrative hearing. (Tr. 11, 26). He possesses at least a high school education. (Tr. 26). He has worked as a kitchen helper, poultry hanger, poultry boner, industrial truck operator, material handler, and telephone solicitor. (Tr. 25). Claimant alleges that he has been unable to work since July 11, 2019,[2] due to limitations resulting from depression, emphysema, bi-polar disorder, attention deficit hyperactivity disorder, manic disorder, and anxiety. (Tr. 277).

## Procedural History

On April 20, 2020, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. After an administrative hearing, Administrative Law Judge Doug Gabbard, II ("ALJ") issued an unfavorable decision on March 9, 2021. Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

---

[2] Although Claimant alleged a May 1, 2016 date of disability in his initial application, at the hearing he amended his alleged disability onset to July 11, 2019. (Tr. 11).

3

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform medium work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in failing to (1) properly analyze Claimant's impairments at step two, (2) follow the required legal standards regarding Claimant's obesity, (3) properly analyze Claimant's RFC and (4) include all of Claimant's limitations in the RFC and the hypothetical questioning of the vocational expert at step five.

**Step Two Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar back degenerative disc disease, emphysema, and depressive, bipolar, anxiety, obsessive, and attention deficit hyperactivity disorders. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform medium work with limitations. Claimant must avoid even moderate exposure to fumes, odors dusts, gases, poor ventilation, and other pulmonary irritants. He is limited to semi-skilled work which requires understanding, remembering, and carrying out some detailed skills, but does not require more complex work duties. The ALJ also found that Claimant should have interpersonal contact with supervisors and coworkers only on a superficial work basis similar to that of a

grocery checker. Lastly, Claimant can adapt to work situations but should only have incidental contact with the general public. (Tr. 17).

After consultation with a vocational expert, the ALJ found that Claimant could perform the representative jobs of linen room attendant, machine packager, and electrical accessory assembler. (Tr. 26). As a result, the ALJ found Claimant has not been under a disability since April 20, 2020, the date the application was filed. (Tr. 27).

Claimant contends that the ALJ improperly considered his impairments at step two. First, Claimant argues that the ALJ improperly characterized and omitted evidence during his analysis of impairments at step two, thus leading the ALJ to improperly find the impairments to be non-severe. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007) (quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)); Soc. Sec. Rul. 85-28, 1985 WL 56856 (Jan. 1, 1985).

5

Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.* (quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008).

This Court has reviewed the evidence pertaining to an October 2018 and January 2020 cardiac workup, which Claimant contends the ALJ mischaracterized, and finds that the ALJ accurately summarized the medical record. Although Claimant also contends that the ALJ omitted an October 2018 diagnosis of emphysema in his step two analysis, the ALJ considered this evidence in his step four analysis. The ALJ did not err in including Claimant's emphysema diagnoses only in his summary of the medical record at step-four and not during his step-two analysis as he found Claimant's emphysema to be severe at step-two. The ALJ considered the medical records pointing to Claimant's medically determinable impairments and did not mischaracterize evidence in his analysis. Despite Claimant's request that this Court find the ALJ failed to characterize some of these impairments as severe, there is no indication that the inclusion of the conditions in Claimant's severe impairments would

create any additional limitations upon Claimant's ability to engage in the assigned RFC. As such, this Court finds no error.

## Consideration of Obesity

Claimant next contends that the ALJ improperly considered the effect his obesity upon his other impairments at step two and beyond. Social Security Ruling 19-2p requires an ALJ consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" when assessing the RFC. Soc. Sec. Rul. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." *Id.* at *2. Each case is evaluated based on the information in the record, resulting in "an individualized assessment of the effect of obesity on a person's functioning[.]" *Id.* at *2, *4. "[G]eneral assumptions about the severity or functional effects of obesity combined with [other] impairments" will not be made. *Id.* at *4.

At step two, the ALJ determined Claimant's obesity to be a non-severe impairment. (Tr. 14). At both step two and four, the ALJ noted Claimant's weight at various doctor's visits as well as his diagnosis of obesity along with medical evidence pertaining to Claimant's other nonsevere impairments. (Tr 14, 20). Nonetheless, the ALJ found that the nonsevere impairments, including obesity, were "amendable [sic] to proper control with appropriate treatment and without the need for aggressive treatment (recommended or anticipated) for these

7

conditions." (Tr. 14). Further, the ALJ cited to medical records showing "normal range of motion of the extremities, no motor or sensory deficits, no pedal edema (only on a few occasions, normal gait, normal peripheral pulses, no calf tenderness, and normal capillary refill," to support his conclusion. (Tr. 14). This Court finds that the ALJ sufficiently considered Claimant's obesity at step two and within his RFC determination.

## RFC Determination

Claimant contends the ALJ's RFC finding is not consistent with the ALJ's own analysis of Claimant's mental state, Claimant's need to elevate his feet as directed by his physician, and the side effects of Claimant's medications. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id.* He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* However, there is "no requirement in the regulations for a direct correspondence between an RFC

finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Despite Claimant's contentions, the ALJ considered the medical evidence pertaining to Claimant's feet swelling and Claimant's medications. The ALJ specifically noted in his RFC determination that Claimant "was advised to elevate his feet only as needed for swelling." Likewise, the ALJ extensively summarized the medical records pertaining to the observation of Claimant's medications, including noting the medications taken, described side effects, changes in medications over time, and the performance of medications. (Tr. 21–24). Claimant failed to point out any record where Claimant reported adverse side effects of the medications. In fact, as the ALJ accurately points out in various records Claimant "denied medication side effects." (Tr. 23)

Even though Claimant suggests that the ALJ's statement that Claimant "exhibited no abnormal notes" created a discrepancy in his analysis and the assigned mental RFC, it is clear that this was a scrivener's error. Given that this statement is sandwiched between the reiteration of medical records reporting Claimant's demeanor and thought processes, it does not follow that the ALJ was making a broad assertion that there were no abnormal notes in the medical records. In fact, in the ALJ's prior summary he noted several "abnormal notes" from the medical records pertaining to Claimant's mental health such as Claimant's reports of hearing voices. (Tr. 23, 25). Despite the scrivener's error, it is evident that the ALJ considered Claimant's mental health records in making his RFC determination. The ALJ considered each of the instances raised by the

Plaintiff and still arrived at the assigned RFC. Further, nothing in the record suggests that any greater limitations should be imposed in the forming of Claimant's RFC. The Court finds no error in the ALJ's RFC determination.

### Step-Five Determination

Claimant first argues that the ALJ erred at step five as the jobs cited did not align with the assigned RFC as the reasoning levels required, reasoning level two and three, were higher than that stated in the ALJ's RFC. The RFC outlined by the ALJ limits Claimant to semi-skilled work which he defines as "work which requires understanding, remembering and carrying out some detailed skills, but does not require doing more complex work duties." The VE provided that with this RFC Claimant could perform two jobs which required a reasoning level of two and one job which required a reasoning level of three. Reasoning level 3 requires a claimant to have the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT app. C, Components of the Definition Trailer, 1991 WL 688702. Reasoning level 2 requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See id.*

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that jobs with a reasoning level of three were inconsistent with an RFC limiting a claimant to "simple and routine work tasks." It determined,

however, that "level-two reasoning appears more consistent" with such an RFC. *Id.*; *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (rejecting the argument that "simple, repetitive and routine work" should be construed as a limitation to jobs with a reasoning-level of one). This Court and others have routinely determined that level-two reasoning is consistent with simple tasks. See, e.g., *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 13, 2017)(finding "simple work" consistent with reasoning level of two); *Olsen v. Saul*, 2019 WL 4318486, at *4 (E.D. Okla. Sept. 12, 2019)(finding "simple tasks" consistent with reasoning level of two); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla., May 6, 2016) (finding "the ALJ properly relied on the jobs identified by the VE with a reasoning level of two" where the RFC limited the claimant to "simple, routine, repetitive instructions.").

A review of the hearing testimony reveals that the hypothetical posed to the VE, which was later incorporated by the ALJ into the RFC, included, among others, limitations that Claimant could understand, remember and carry out some detailed skills but not more complex work. (Tr. 17, 60–61). Based on the ALJ's hypothetical question at this skill level, the VE testified Claimant could perform the jobs of linen room attendant, which requires a reasoning level of three, as well as machine packager and electrical accessory assembler, which require a reasoning level of two. (Tr. 61). The RFC set forth by the ALJ makes clear that Claimant can perform jobs higher than that of simple tasks, thus in light of *Hackett*, this Court finds there is no conflict between the ALJ's RFC limiting Claimant to understanding, remembering, and carrying out some

detailed skills and the jobs of linen room attendant, machine packager, and electrical accessory assembler.

Next, Claimant argues that the ALJ failed to include in his RFC determination and consequently his hypothetical pose to the VE limitations found during the ALJ's paragraph B analysis at step 3. Although, Claimant suggests that the limitations found in the paragraph B criteria must be included in the hypothetical questioning of the vocational expert.  This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit.

The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  Soc. Sec. Rul. 96–8p, 1996 WL 374184, *4 (July 2, 1996). The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error.  *Beasley v. Colvin*, 520 Fed. Appx. 748, 754 (10th Cir. 2013). The court also declined Claimant's invitation to read *Franz v. Astrue*, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007) as "requiring an ALJ's RFC assessment to mirror his step-three findings" finding such language as "dicta." *Id.* at 754 n.3. Claimant cites to the case of *Wells v. Colvin*, 727 F.3d 1061, 1065 n.3 (10th Cir. 2013) in support of his argument that the paragraph B criteria limitations must be included in the hypothetical questions posed to the VE.  The footnote simply

does not state this position. The court found a mild restriction should have been considered at step two and subsequent steps. It does not require or even suggest the inclusion of the restrictions in the questioning of the expert. This Court finds no error in the hypothetical questioning of the VE in this regard.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

**IT IS SO ORDERED** this 14th day of September, 2023.

_____
**JASON A. ROBERTSON**
**UNITED STATES MAGISTRATE JUDGE**